GUSTAVUS B. WHITELEY *vs.* INHABITANTS OF CHINA.

*Evidence as to damages to horse by defective way.*

In an action for injury to plaintiff's horse by reason of defect in a way the defendants are bound to keep in repair, testimony as to the value of the horse before and after the accident is admissible.

If the injury is alleged to have caused lameness, the condition of the horse and of his legs within a week after the occurrence is material, and testimony relative thereto should be admitted.

Where it is alleged that a horse, sound, safe, and kind before receiving an injury by breaking through a bridge, was by that accident rendered unsound and so timid as to be unsafe and unkind, testimony as to the conduct of the horse in crossing bridges immediately before and after the accident—and any other direct evidence of the facts alleged—is admissible.

ON EXCEPTIONS.

The plaintiff instituted this action to recover damages said to have been sustained by him by an injury done to his horse by a hole in a bridge which defendants were bound to keep in repair. The statement in the writ was, substantially, that in crossing the bridge the horse got one foot into this hole, was thrown down, lamed, and otherwise greatly injured and bruised on his legs and body, " and became so frightened that he has always been timid when crossing a bridge since, and has never been safe since that time."

The plaintiff was a witness in his own behalf at the trial, and after the usual preliminary questions to show him competent to ex-

press an opinion on the subject, was asked by his counsel, "What, in your judgment, was that horse actually worth before the accident happened?" · This inquiry was objected to and the answer excluded.   The witness testified that before the accident the horse was sound and kind, and was then asked whether or no after the accident he was as kind as before, which question he was not· permitted to answer.   His counsel then inquired of him, "What took place after the accident in crossing the bridge?"   The reply was excluded, as was the answer to the question, what (if anything) took place immediately after the accident the first time the horse was harnessed and used.

Joseph Young, called by the plaintiff, testified that he knew the horse before the accident, and drove him ; bought him within a week after the injury and owned him three months.   He was asked if he made an offer for the horse before the accident, but was not allowed to state ; he did testify, however, that in his opinion the horse was worth fifty dollars less after the accident than before. The plaintiff proposed to tell what he was offered for the horse on the day of the accident, before it happened ; but this the court would not permit.   Young was asked, "What was the condition of the horse when you bought him as regards his legs, his lameness,· and as regards his kindness?" which was objected to by the defendant, and the answers excluded.

The judge's charge to the jury upon the points considered in the opinion was as follows :

"The rule by which you are to be governed is simply this : The damage to the·property which was the direct and necessary result of this accident. . . . How much was the horse injured ?   How much was taken from his value as the direct and necessary result of that accident (if any)?   That, as I understand the law, is the rule of damages by which you are to be governed.   So you see this is a matter of dollars and cents.   What was the property reduced in value in consequence of that accident?   You will see, then, the necessity of some of the rulings which have been made in this case, that the case must be confined really to the damage which took

place—which happened at that time. If it had been proved that the horse, for instance, had a limb broken, why the necessary expense of curing it (if it was to be cured), or if it was such as to render it necessary to kill the horse, the value of the horse would have been the rule of damages. If the injury had been such that it could have been cured, the necessary expense of curing. Here, then, is nothing of the kind. So far as the subsequent history of the horse is concerned, for the reason which I have suggested to you, I did not admit that. What might have happened subsequent to this is not a matter important for us to know. It is proper for the plaintiff to prove to you the nature of the injury which resulted to the horse, and the extent of the damage or the amount to be deducted from his value in consequence of that injury, and that is as far as he is authorized to go. There are no consequential damages laid in the writ, and if there were, I do not deem it would make it legitimate or legal for him to prove them here. No question of that kind arises in this case. The rule which I give you is a simple one. You will apply the testimony to it, and come to such a conclusion as you are authorized to do from the testimony in the case."

The presiding judge was requested to instruct the jury that if the horse was rendered timid or unkind by the accident, they would have a right to take this fact into consideration, in estimating the damages, which instruction was given.

To the other rulings above-mentioned the plaintiff excepted, the verdict in his favor being small and, in his opinion, reduced by those rulings.

*J. H. Greely*, for plaintiff, in support of exceptions.

The evidence as to the value of the horse before and after receiving the injury was competent and could properly be given by the plaintiff, who had shown himself an expert. *Wyman* v. *Lexington*, 13 Met. 316; *Crane* v. *Northfield*, 33 Verm. 124; *Nellis* v. *McCorn*, 35 Barb. 115; *Honsee* v. *Hammond*, 39 Barb. 89; *Allison* v. *Chandler*, 11 Mich. 542; *Illinois Cent. R. R.* v. *Finnegan*, 21 Ill. 646; *Dickinson* v. *Fitchburg*, 13 Gray, 546.

So was that relating to the animal's kindness and the effect the accident had upon him in this respect and in inspiring timidity, as well as inflicting bruises visible a week afterwards.

The offers made for the horse in good faith, were admissible. 13 Met. 316 ; 13 Gray, 546 ; *March* v. *P. & C. R. R.*, 19 N. H. 372 ; *Carr* v. *Moor*, 41 N. H. 131 ; *Tuttle* v. *Holyoke*, 6 Gray, 447.

" The necessary expense of curing " the horse is not the true rule ; time and trouble of effecting the cure are an element of damage. *Street* v. *Laumier*, 34 Misso. 469 ; *Gillett* v. *Western R. R.*, 8 Allen, 560 ; 11 Mich. 542 ; 41 N. H. 131, cited *supra*.

*A. Libby*, for defendants.

Evidence as to the value of the horse properly excluded. The witnesses stated the damage to the horse and the injuries he received. What happened afterwards had no tendency to show the damage occasioned by the accident. The plaintiff was allowed to prove that the horse was rendered timid and unkind by the injury ; hence the instructions were too favorable to him, as this is too vague and speculative an injury to be a proper element of damage.

TAPLEY, J. This was an action to recover damages for injuries received by the plaintiff's horse from a defect in the highway of the defendant town.

The question raised by the exceptions relates to damages. The value of the horse before the accident and after was a material matter in ascertaining the amount of damage done. The condition of the horse as regards his lameness and his legs within a week after the accident, might aid very much in determining the character and extent of the injury received. The questions relative to this matter were, we think, proper, and the answers should not have been excluded.

The presiding judge instructed the jury " that if the horse was rendered timid or unkind by the accident, they would have a right to take this fact into consideration in estimating damages." This, we think, under this declaration was proper, and the plaintiff should have been allowed to prove this fact by any direct evi-

dence showing the fact. We cannot conceive of any evidence more direct to this point than the conduct of the horse afterward and immediately before the accident in similar places. Witness was allowed to state that previous to the accident the horse was sound and kind ; if he was rendered unkind and timid so as to be unsafe to drive over any bridge thereafter, it was a " damage in his property " within the meaning of R. S., c. 18, § 61, and the plaintiff should have been allowed to show the fact.

*Exceptions sustained.*

APPLETON, C. J.; CUTTING, KENT, DICKERSON, and BARROWS, JJ., concurred.